# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

**WANDA LYNN WOOLRIDGE,**

    Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

    Defendant.

No. 12-CV-4011-DEO

ORDER

_____

## I. INTRODUCTION

This matter is before the Court pursuant to Wanda Lynn Woolridge's (hereinafter Ms. Woolridge) Complaint, requesting disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* This Court has authority to review the final decision of the Commissioner of the Social Security (Commissioner) pursuant to 42 U.S.C. § 405(g). The parties appeared by phone for hearing on November 16, 2012. After hearing, the Court took the matter under advisement and now enters the following:

## II. FACTUAL BACKGROUND

At the time of the hearing, Ms. Woolridge was a 57 year old woman residing in Sioux City, Iowa. She is married. She has a tenth grade education and a GED. She has a limited employment history, working in various factory type jobs

through 1980s. At the age of 31, Ms. Woolridge hurt her back while on the job. She alleges that she has been disabled since that time. However, she worked as a beautician semi-regularly from the late 1980s until 2007.

### III. PROCEDURAL HISTORY

Ms. Woolridge filed for SSI benefits on July 27, 2009. The onset date, and the dates of coverage, are at issue in the present appeal. Ms. Woolridge's claim was initially denied by the Social Security Commission on August 25, 2009, and upon reconsideration on December 16, 2009. Ms. Woolridge filed a request for a hearing, which was held on May 25, 2011. The hearing was continued until August 9, 2011, so Ms. Woolridge could consult counsel. The ALJ entered a decision on September 2, 2011, denying benefits. Ms. Woolridge appealed. The Appeals Council denied Ms. Woolridge's appeal on November 22, 2011. Ms. Woolridge then filed the present action.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a

"severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(I-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(I). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can

still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the

burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and determined that Ms. Woolridge was insured through 12/31/92; she had not engaged in substantial gainful activity since her claimed onset date of January 1, 1988; she had a severe impairment – degenerative disc disease of the lumbar spine; her listed impairments did not constitute a total disability for the purposes of an award of benefits; she could perform light work and stand six hours in an eight hour workday; she could perform past relevant work as a cashier; and she could also perform other jobs available in the national and local economy. Tr. 15-23.

## IV. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F. 3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v.

Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based in legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**V. ISSUES**

After the hearing, the ALJ concluded that Woolridge was not disabled prior to the date last insured of December 31,

6

1992. Ms. Woolridge states that the ALJ's decision was contradictory to substantial evidence on the record as a whole, and that the decision should be reversed and remanded to the Social Security Administration with an order to award benefits, or in the alternative, remand for further proceedings. Additionally, Ms. Woolridge argues that she does not have the residual capacity to do any work available in the local economy and that her disability accrued prior to December 31, 1992.

## VI. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act (hereinafter the Act). The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A). There are two essential issues in this case, whether Ms. Woolridge is disabled, and whether she was disabled by December 31, 1992. Those two issues are vitally interconnected. The Court must not consider whether Ms. Woolridge is disabled today. Rather, the Court must

7

consider whether substantial evidence supports the ALJ's determination that Ms. Woolridge was not disabled on December 31, 1992. For the purposes of writing an orderly Ruling, the Court will first consider the question of whether Ms. Woolridge was disabled between the disability onset date in 1988 and the end of Ms. Woolridge's coverage in 1992. The Court will then turn to the other matters discussed in the parties' briefs.

### A.  Retrospective Disability

The ALJ determined that Ms. Woolridge is not disabled. The ALJ found that:

> the claimant had the following severe impairments: degenerative disc disease ... this medical condition imposed more than a minimal limitation on her ability to perform basic work-related activities... After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity for light exertion:  to lift up to twenty pounds occasionally and up to ten pounds frequently. She was able to sit, stand, and/or walk for up to six hours in an eight-hour workday. ... After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

> residual functional capacity assessment... Contrary to the claimant's allegation of constant, severe and debilitation back pain, the medical evidence prior to the date last insured chronicles only intermittent and conservative treatment for symptoms of back pain. ... Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework ...

Tr. 16, 17, 18, 22.

Ms. Woolridge argues that the ALJ failed to properly weigh the medical evidence, her testimony, and the testimony of others. As noted above, the ALJ found that Ms. Woolridge was not disabled at the time her disability coverage ran out. Ms. Woolridge argues that she was in fact disabled by December 31, 1992, and that the medical evidence available in the record supports that conclusion. In coming to this conclusion, Ms. Woolridge relies on the opinions of two medical experts, Dr. Durward and Dr. Jennings. Unfortunately, those opinions were not available to the ALJ, they were only obtained by the Plaintiff after the administrative hearing. However, they were available to the Appeals Council. The

9

Appeals Council stated that, "in looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 1-2. However, this Court is persuaded that the Appeals Council failed to consider the record in light of this new evidence. This new evidence seems to contradict the ALJ's findings in a significant way.

"Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability." Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995). It is improper for an ALJ to reject a doctor's retrospective diagnosis when the retrospective diagnosis is supported by evidence in the Plaintiff's medical records. Grebenick v. Chater, 121 F.3d 1193, 1199 (8th Cir. 1997). However, where the impairment onset date is critical, retrospective medical opinions alone will usually not suffice unless the claimed disability date is corroborated, as by subjective evidence from lay observers like family members. Jones, 65 F.3d at 104. Epperson v. Apfel, C94-2077, 1999 WL 33656852 (N.D. Iowa Mar. 31, 1999).

As was discussed above, Ms. Woolridge has a severe back/spine impairment. It is clear from the record that Ms. Woolridge began treating for her back issue before December

10

31, 1992. Dr. Durward began treating Ms. Woolridge in the 1980s. In the new evidence, Ms. Woolridge's attorney asked Dr. Durward if her condition began before 12/31/92. Dr. Durward said it did. The doctor also said that she would have had severe pain prior to 12/31/92, that she would have been periodically bed ridden and would have been needed to recline periodically throughout the day. Tr. 29. He also said that her work restrictions began before December 31, 1992. Tr. 29.

Dr. Durward's conclusions were supported by Dr. Jennings, who also began treating Ms. Woolridge in the 1980s. Tr. 280, 355. In a letter dated September 6, 2011, Dr. Jennings stated that, "[w]ith regard to your questions concerning Ms. Woolridge, she did have degenerative disc disease prior to 12-31-1992 ... her report that the pain was severe enough to keep her bedridden periodically is probably true. She also states that she would need to recline periodically throughout the day, and this would be consistent with her condition prior to 12-31-1992." Tr. 355.

Dr. Durward and Dr. Jennings have both presented valid retrospective medical opinions. Moreover, they are both treating doctors. These opinions are supported by evidence in the record including medical evidence, Ms. Woolridge's testimony, and the statements of her family members. See for

11

example, Tr. 229-231.[1] (The Court will discuss issues related to credibility more fully in the next section). Dr. Durward and Dr. Jennings' retrospective opinions should be given proper consideration, and it is clear that the Appeals Council failed to do so.

**B. Credibility**

Ms. Woolridge testified that she has had severe issues with her back since the mid 1980's. As noted above, the ALJ determined that Ms. Woolridge, her husband, her daughter, and the others that testified were not credible.

"In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective

---

[1] Ms. Woolridge states that she began having back problems in early 1984. She stated that during the relevant period, "I could not stand or sit for any length of time, when I sat I felt like I was sitting on rocks and [had] very hot sensations." Tr. 229. Her husband stated that when he met her in 1988, her back problems were already so severe she could not do line work and that throughout the time he has known her, sitting or standing for even short periods can cause severe pain. Tr. 231.

12

medical evidence.  See O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003).  However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question."  Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

The ALJ determined that Ms. Woolridge's testimony that she could not stand was not credible, because it was not supported by medical evidence.  Similarly, the ALJ dismissed the testimony and letters of Ms. Woolridge's family that stated she could not stand, and has not been able to since before December 31, 1992.[2]  However, as discussed above, the letters provided by Dr. Durward and Dr. Jennings after the hearing have cast significant doubt on the ALJ's medical findings.  In light of those letters, substantial evidence does not support a finding that Ms. Woolridge, and her family, were not credible.  In fact, those letters bolster the credibility of Ms. Woolridge and her family.  At this point,

---

[2] Ms. Woolridge's daughter stated that, during the relevant period, "[M]y mother spent a great deal of time in bed.  This was the years before I was 16 and able to drive.  I recall my mother often being in bed, in pain, and not able to take me places due to her back problems.  I remember in particular that my mother's boyfriend at the time would come over and cook for both my mother and me and help her do household chores like the laundry."  Tr. 276.

13

all parties involved in this case in any manner, who knew Ms. Woolridge during the relevant time period, agree that she had severe problems before 12-31-1992.[3]  Accordingly, it is clear that substantial weight supports Ms. Woolridge's testimony and other evidence that she and her family provided to the Commissioner.

**C.  Listed Impairment**

There is a disagreement between the parties on whether Ms. Woolridge argued that her disability meets the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).  The ALJ concluded that her disability did not.  Tr. 16.  However, during the hearing, Ms. Woolridge argued that even if she had not argued a listed impairment, it was the duty of the ALJ to inquire into whether her symptoms amounted to a listed impairment.  This dispute is significant because if Ms. Woolridge has a listed impairment, she is disabled without further consideration.  The Court agrees with the Plaintiff that the ALJ had a duty to examine whether Ms. Woolridge's conditions qualified a listed impairment.  The ALJ should have made a

---

[3]This includes the chiropractor, Dr. Trapper, who stated that Ms. Woolridge began treating for lower back pain in 1984.  He stated that he treated Ms. Woolridge for lower back pain 15 times before 1992.  Tr. 316.

14

specific finding regarding the listed impairment.

The ALJ concluded that Ms. Woolridge did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Tr. 16).[4] As noted in Ms. Woolridge's brief, in December 1985, Ms. Woolridge was hospitalized for lower back pain, and it was noted that she had a bulging disc at the L4/L5 location on her spine. Tr. 279. Dr. Jennings noted that the pain was severe, and would shoot down her buttocks - sitting and bending made the pain "extremely bad." Tr. 280.

---

[4]The relevant portion of the appendix appears to be 1.00 (Musculoskeletal system), and in particular, 1.04 (disorders of the spine). 1.04 states: 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); OR B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours; OR C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

She saw Dr. Durward due to a reoccurrence of the pain in June 1988. Tr. 284. Her chiropractor (Dr. Tapper) and Dr. Jennings could not help alleviate the pain with treatment or medication. Tr. 284. She was on bed rest, but when she tried to resume activity, she developed severe back pain which went into her buttocks and left leg. Tr. 284. In August 1988, Ms. Woolridge saw Dr. Durward, who noted that she previously had been treated for back pain with bed rest, traction, and physical therapy. The pain gradually resolved, but not for well over a year. Tr. 284. Dr. Durward recommended conservative treatment and exercise for her low back pain and sciatica. Tr. 285. When that evidence is considered in light of retrospective opinions and testimony, it seems clear that Ms. Woolridge has an impairment as described Section 1.04 (quoted above.)

**D. Residual Capacity**

The ALJ stated that, "great weight is given to the opinion of Dr. Durward, as he is a treating source with the perspective of a longstanding treatment history and of his expertise as a neurosurgeon." Tr. 21. Given the fact that Dr. Durward's subsequent letter states that Ms. Woolridge's impairment and restrictions date to 1992, it can no longer be said that the ALJ's decision is supported by substantial

evidence. Accordingly, the ALJ's determination that Ms. Woolridge has the residual capacity to work has also been invalidated. The very medical evidence that the ALJ assigned "great weight" in determining that Ms. Woolridge was not disabled in 1992 has been thrown into doubt. In fact, when Dr. Durward's opinion is considered in light of subsequent letter, it is clear that substantial weight supports a finding of disability.

Ms. Woolridge repeatedly stated that she could not sit or stand for long periods of time. She also stated, as did her daughter and husband, that she is occasionally bed ridden and the condition dates from before 12-31-1992. The ALJ failed to properly credit that testimony when considering whether there were jobs Ms. Woolridge could perform, and in the hypothetical questions she asked to the vocational expert. Substantial weight does not support the ALJ's finding that Ms. Woolridge has the functional capacity to perform jobs available in the local and national economy.

**VII. CONCLUSION**

The Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record

'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000). In this case, the Court finds that remand solely for award of benefits is appropriate. Substantial evidence does not support the ALJ's finding that Ms. Woolridge was not disabled in 1992. The ALJ failed to give proper credit to the testimony of Ms. Woolridge and her family. The ALJ did not have access to the retrospective opinions available to this Court. When that evidence is considered in light of the medical records available to the ALJ, it is clear that Ms. Woolridge has a disorder of the spine as defined in section 1.04. However, regardless of whether she has a listed impairment, substantial evidence supports a finding that she can not return to the work force in any meaningful manner. Ms. Woolridge can not return to past relevant work, nor are their jobs available that she can perform. Accordingly, overwhelming evidence supports a finding of disability.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Woolridge's attorney wishes to apply for EAJA fees, it must be

done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 8th day of January, 2013.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa